## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. _____

THE KONG COMPANY, LLC, a Colorado
limited liability company,

        Plaintiff,

v.

JSS SUPPLY LLC, an Illinois limited
liability company, JASON SMITH, a natural
person, and JOHN DOES 1-10, individually
or as corporate/business entities,

        Defendants.

---

## COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF
## FOR VIOLATIONS OF 15 U.S.C. § 1114; 15 U.S.C. § 1125; C.R.S. § 6-1-105;
## TORTIOUS INTERFERENCE; AND RELATED CLAIMS; AND JURY DEMAND

---

Plaintiff The Kong Company, LLC ("KONG" or "Plaintiff") brings this action against Defendants JSS SUPPLY LLC ("JSS Supply"), Jason Smith ("Smith"), and John Does 1-10 (collectively, "Defendants") for (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125; (2) unfair competition in violation of the Lanham Act, 15 U.S.C. 1125(a)(1)(A); (3) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); (5) common law trademark infringement and unfair competition; (6) deceptive trade practices in violation of C.R.S. § 6-1-105; and (7) tortious interference with contract and business relations. These claims arise from Defendants' infringement of KONG's trademarks in connection with Defendants' unlawful and unauthorized advertisement and sale of KONG-brand products on the Internet.  In support of its Complaint, KONG alleges as follows:

## PARTIES

1.      KONG is a limited liability corporation, organized under the laws of the state of Colorado, with its principal place of business located in Golden, Colorado.

2.      JSS Supply is a limited liability company, organized under the laws of Illinois, with its principal place of business located at 309 NE 6th Street, Atlanta, IL 61723.  Upon information and belief, JSS Supply operates or assists in the operation of a storefront on www.amazon.com ("Amazon") that is currently called "JSS SUPPLY."   This storefront can be accessed at: https://www.amazon.com/sp?seller=A1WFD782PGXDEH.   Upon information and belief, JSS Supply also operates or assists in the operation of a storefront on www.ebay.com ("eBay") that is currently called "jsssupply."   This storefront can be accessed at: https://www.ebay.com/usr/jsssupply.  JSS Supply does business throughout the United States through the "JSS SUPPLY" and "jsssupply" storefronts.

3.      JSS Supply was involuntarily dissolved by the Illinois Secretary of State on June 14, 2019 pursuant to 805 ILCS 5/12.40 and 805 ILCS 5/12.35(a) for failing to file an annual report for 2018.  Under Illinois's survival statute, however, JSS Supply can still be sued in this action because this action commenced within five years of when JSS Supply was dissolved.  *See* 805 ILCS 5/12.80; *Haskins v. Hogan*, 2015 IL App (3d) 140609-U (3d DCA June 9, 2015).

4.      Smith is a natural person who, upon information and belief, resides at 309 NE 6th Street, Atlanta, IL 61723.  Upon information and belief, Smith operates or assists in the operation of the "JSS SUPPLY" Amazon storefront and the "jsssupply" eBay storefront.  Smith does business throughout the United States through the "JSS SUPPLY" and "jsssupply" storefronts.

5.      The articles of organization for JSS Supply list Smith as the sole manager of JSS Supply.  Upon information and belief, Smith is in control of and primarily responsible for JSS Supply and its actions.

2

6.     KONG asserts claims against Smith in both his individual capacity as well as his capacity as a corporate officer of JSS Supply.

7.     Until it conducts discovery, KONG cannot determine whether Smith in his individual capacity, JSS Supply, or both operate the "JSS SUPPLY" Amazon storefront and "jsssupply" eBay storefront.

8.     Alternatively, upon information and belief, Smith directs, controls, ratifies, participates in, or is the moving force behind the sales of infringing products bearing KONG's trademarks by JSS Supply.  Accordingly, Smith is personally liable for infringing activities of JSS Supply without regard to piercing the corporate veil.

9.     Alternatively, on information and belief, JSS Supply follows so few corporate formalities and is so dominated by Smith that it is merely an alter ego of Smith.  This is reflected, in part, by the fact that the publicly-listed "principal office" of JSS Supply is the same address as Smith's home residence.  Accordingly, KONG is entitled to pierce the corporate veil of JSS Supply Inc and hold Smith personally liable for the infringing activities of JSS Supply.

10.     KONG believes that other individuals or entities may be responsible for the events and occurrences referred to herein or be otherwise interested in the outcome of the dispute. The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise of these individuals or entities are unknown to KONG.  Therefore, KONG sues these Defendants by the fictitious names John Does 1 through 10.  When the true names, involvement, and capacities of these parties are ascertained, KONG will seek leave to amend this Complaint accordingly.  If KONG does not identify any such parties, it will dismiss these Defendants from this action.

## JURISDICTION

11.     This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367.  KONG's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125, and its claims arising under the laws of Colorado are substantially related to its federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

12.     This Court has personal jurisdiction over Defendants because they have expressly aimed tortious activities toward the State of Colorado and established sufficient minimum contacts with Colorado by, among other things, advertising and selling infringing products bearing KONG's trademarks to consumers within Colorado through highly interactive commercial websites, through the regular course of business, with the knowledge that KONG is located in Colorado and is harmed in Colorado as a result of Defendants' sales of infringing products to Colorado residents.  Defendants know that KONG is located in Colorado, among other reasons, because they received cease-and-desist letters that identified KONG as a limited liability company located in Colorado and notified Defendants that their unlawful actions are harming KONG in Colorado.  KONG's claims arise out of Defendants' sales of infringing products bearing KONG's trademarks to Colorado residents through the regular course of business.

## VENUE

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred within this judicial district.

## FACTUAL ALLEGATIONS

### KONG and Its Trademarks

14.     KONG manufactures and distributes high-quality pet products including durable rubber toys, grooming supplies, and treats for dogs and cats.  KONG sells its products in the United

4

States exclusively through a network of authorized distributors, retailers, and resellers ("Authorized Sellers").

16. KONG permits Authorized Sellers to sell KONG products in approved channels only and requires Authorized Sellers to abide by applicable KONG policies relating to quality controls, customer service, and other sales practices (collectively, the "KONG Rules").

16. Authorized Sellers include KONG's authorized distributors, who have permission under the KONG Rules to sell KONG products to pet-specialty enterprises that (a) sell primarily cat and dog products, (b) derive at least 85% of their sales from pet-related products, (c) adhere to the KONG Rules, and (d) have not had their Authorized-Seller status revoked by KONG.

17. Authorized Sellers also include KONG's authorized resellers, who have permission under the KONG Rules to sell KONG products purchased from authorized distributors on to end users. The KONG Rules define end users as any purchasers of KONG products who are the ultimate consumer of the products and who do not intend to resell the products. Under the KONG Rules, an authorized reseller with physical retail locations is permitted to sell on websites that the reseller maintains, provided that the website publishes the reseller's full legal name and contact information and does not imply any third-party affiliations. By contrast, authorized resellers without physical retail locations cannot sell KONG products on the Internet unless they first obtain KONG's written consent.

18. Finally, Authorized Sellers include authorized retailers, who consist primarily of large national retail chains that operate physical retail locations and purchase KONG products directly from KONG. Like authorized resellers, authorized retailers may, under the KONG Rules, sell on websites that retailers maintain provided that the websites publish retailers' full legal names and contact information and do not imply any third-party affiliations.

19.     KONG devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name, and reputation.  By distributing products exclusively through Authorized Sellers who are required to follow the quality controls and other requirements in the KONG Rules, KONG is able to ensure the safety, well-being, and satisfaction of consumers and their pets and maintain the integrity and reputation of the KONG brand.  In the highly competitive pet-supplies market, quality and customer support are a fundamental part of a customer's decision to purchase a product.

20.     To promote and protect the KONG brand, KONG has registered numerous trademarks with the United States Patent and Trademark Office (the "KONG Trademarks"), including, but not limited to: KONG® (U.S. Trademark Reg. Nos. 1,443,417; 3,835,053; 4,760,777; 3,020,593; and 1,834,655); KONG SPORT® (U.S. Trademark Reg. No. 5,353,459); KONG NATURALS® (U.S. Trademark Reg. No. 4,334,916); KONG BALLISTIC® (U.S. Trademark Reg. No. 4,023,463); KONG SQUEEZZ® (U.S. Trademark Reg. No. 4,119,568); KONG FLYER® (U.S. Trademark Reg. No. 4,334,917); ZOOM GROOM® (U.S. Trademark Reg. No. 1,693,092); WOBBLER® (U.S. Trademark Reg. No. 4,497,715); KONG WOBBLER® (U.S. Trademark Reg. No. 3,971,491); KICKEROO® (U.S. Trademark Reg. No. 3,840,912); JUMP'N JACK® (U.S. Trademark Reg. No. 3,225,590); TUGGER KNOTS® (U.S. Trademark Reg. No. 4,106,261); STUFF-A-BALL® (U.S. Trademark Reg. No. 2,826,095); BISCUIT BALL® (U.S. Trademark Reg. No. 2,276,435); EASY TREAT® (U.S. Trademark Reg. No. 3,857,585); EASY FREEZE® (U.S. Trademark Reg. No. 4,289,960); EZ SOFT® (U.S. Trademark Reg. No. 4,088,705); SNUGGEASE® (U.S. Trademark Reg. No. 3,487,294); CUTESEAS® (U.S. Trademark Registration No. 5,078,429); GOODIE BONE® (U.S. Trademark Reg. No. 2,850,495); BOUNZER® (U.S. Trademark Reg. No. 4,328,468); ZIGGIES® (U.S. Trademark Reg. No.

3,458,637); TAILS® (U.S. Trademark Reg. No. 4,328,398); KITTY KONG® (U.S. Trademark Reg. No. 4,457,480); WORLD'S BEST® (U.S. Trademark Reg. No. 4,565,747); CATS NEED TO PLAY (U.S. Trademark Reg. No. 4,475,714); DOGS NEED TO PLAY® (U.S. Trademark Reg. No. 4,283,312); YOUR DOG WILL LOVE YOU FOR IT® (U.S. Trademark Reg. No. 3,725,922); 2D ZOOM GROOM CAT BRUSH® (U.S. Trademark Reg. No. 4,904,352); 2D ZOOM GROOM DOG BRUSH® (U.S. Trademark Reg. No. 4,898,024); BRAIDZ® (U.S. Trademark Reg. No. 4,707,407); CLOUD® (U.S. Trademark Reg. No. 4,328,397); MARATHON® (U.S. Trademark Reg. No. 4,732,759); RECIPE FOR THE "PERFECT" DOG® (U.S. Trademark Reg. No. 4,503,539); and TENNIS PALS® (U.S. Trademark Reg. No. 4,732,966).

21.     The registration for each of the KONG Trademarks is valid, subsisting, and in full force and effect.  KONG's right to use many of the KONG Trademarks has become incontestable under 15 U.S.C. § 1065 because the trademarks have been in continuous use, KONG received no final legal decision issued against the trademarks, and KONG timely filed a Section 15 Declaration describing the trademarks' use.  Accordingly, these trademarks serve as conclusive evidence of KONG's ownership of the marks and of its exclusive right to use and direct the use of the marks in commerce and in connection with the sale and distribution of products bearing the marks identified in the registrations, as provided by 15 U.S.C. § 1115(b).

22.     KONG actively uses and markets all of the KONG Trademarks in commerce throughout the United States.

23.     Consumers recognize the KONG Trademarks as being associated with high-quality products in the pet-supplies industry.

24.     Consumers associate the KONG name with the quality and innovation of KONG's products, which have been remarkably consistent and dependable since the company's founding

in 1976.  For the past forty years and counting, KONG has been committed to taking all possible measures to guarantee safe, quality, innovative, and lasting products.

25.     KONG has received numerous awards and industry recognitions demonstrating consumers' association of the brand with quality.  These recognitions include, but are not limited to, the World Branding Forum's Global Brand Award for 2017 and 2019; Gomin's 2016 Most Promising Brand Award; Prevention Magazine's 2011 award for "The Best Chew Toys to Choose;" and Pet Product News's 2006 Best of the Best Award.

26.     Because of the quality of its products and decades-long use of the KONG name, consumers trust the KONG name and KONG products.

27.     For these reasons, the KONG Trademarks are widely recognized by the general consuming public of the United States and KONG is recognized as the source of products bearing the KONG Trademarks.

28.     Due to the superior quality and exclusive distribution of KONG products, as well as KONG's recognition as the source of high-quality products, the KONG Trademarks have substantial value.

**Online Marketplaces and the Challenges They Present to KONG Product Quality**

29.     E-commerce retail sales have exploded over the past decade.  From 2007 to the beginning of 2018, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 3.2% to 9.4%.  *E-Commerce Retail Sales as a Percent of Total Sales*, FEDERAL RESERVE BANK OF ST. LOUIS, March 13, 2019, https://fred .stlouisfed.org/ series/ECOMPCTSA.

30.     In 2018, consumers spent $517.36 billion on e-commerce sales, a 15% increase from 2017.  The massive growth in e-commerce is being driven largely by sales on online

marketplaces. For example, in 2018, United States consumers spent $206.82 billion in e-commerce sales on Amazon, a 16% increase from 2017. *See* Fareeha Ali, *U.S. ecommerce sales grow 15.0% in 2018*, DIGITAL COMMERCE 360 (March 13, 2019), https://www.digitalcommerce360.com/article/us-ecommerce-sales/.

31.     While online marketplaces have created a great deal of opportunity, they also greatly challenge a brand owner's ability to control the quality and safety of its products.

32.     For example, consumers who purchase products through the online marketplaces cannot touch, inspect, or interact with the product before purchasing it and cannot select a different product if the one they initially select is damaged or has been tampered with. Instead, consumers must trust that the product they choose over the Internet will arrive and be of the quality they expect and typically receive from the manufacturer.

33.     The online marketplaces also allow third-party sellers to sell products anonymously, i.e., without disclosing their actual identities or sources to consumers. As such, any person who is able to obtain a brand owner's products through unauthorized diversion can sell the products on the online marketplaces without having to reveal his or her identity to the consuming public. This effectively prevents the manufacturer from being able to reach sellers, like Defendants, and address quality concerns.

34.     It is common for these unauthorized sellers to sell diverted products of lesser quality or to mix fake products in with shipments to unwitting consumers. Scott Cohn, *Greed Report: Your quest for savings could land you in the "gray market,"* CNBC, Sept. 8, 2016, https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html. Indeed, there is an "epidemic" of counterfeit products being sold on the online marketplaces that diverters are exploiting because they know consumers trust these marketplaces

and think that the products they are buying through these marketplaces are genuine.  Spencer Soper, *Amazon Gets Real About Fakes*, Bloomberg, Nov. 28, 2016, https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes.

35.     In its 2018 annual report to its shareholders, in fact, Amazon admitted that third-party sellers on its marketplace may be selling products that are "counterfeit," "pirated," "stolen," or otherwise "materially different" from the product that was described to consumers. Amazon.com, Inc., Annual Report (Form 10-K), at 14 (Jan. 31, 2019), *available at* https://www.sec.gov/Archives/edgar/data/1018724/000101872419000004/amzn-20181231x10k.htm.  Amazon acknowledged that these actions are "violating the proprietary rights of others."

36.     Because these diverters operate anonymously, a brand owner has no ability to exercise its quality controls over the products they sell or to ensure that the products are safe and authentic.

37.     The structure of online marketplaces also poses threats to a brand owner's ability to maintain its goodwill, reputation, and brand integrity.

38.     When purchasing products on a marketplace, consumers cannot easily distinguish between a brand owner's authorized and unauthorized sellers.  Indeed, on some marketplaces, like Amazon, all sellers are listed under one product listing.  As a result, many customers purchase products without knowing that they purchased from an unauthorized seller that does not (and cannot) follow the manufacturer's quality controls or is selling products that do not qualify for benefits offered by the manufacturer.

39.     When a customer purchases a product on a marketplace and receives a damaged, defective, expired, soon-to-expire, or poor-quality product, the customer is much more likely to associate that frustration with the brand than with the anonymous seller.

40.     The online marketplaces give disgruntled consumers a powerful and convenient forum to air their grievances: product reviews.  Any consumer who is dissatisfied with a product he or she receives can post a review on the marketplace for all other consumers to see.  These reviews, which are often permanently fixed, will generally criticize the brand rather than the seller who sold the product.

41.     These product reviews have a significant impact on a brand's reputation.  Survey results show that 82% of United States adults "sometimes" consult online reviews when buying a new product online and 40% "always" or "almost always" consult such reviews.  Aaron Smith & Monica Anderson, *Online reviews*, PEW RESEARCH CENTER, Dec. 19, 2016, http://www.pewinternet.org/2016/12/19/online-reviews/.

42.     Consumers place extraordinary trust in these online reviews, as they are more than ten times more likely to rely on consumer-generated product reviews than on product descriptions written by brand owners.  *Moms Place Trust in Other Consumers*, EMARKETER, Feb. 10, 2010, https://www.emarketer.com/Article/Moms-Place-Trust-Other-Consumers/1007509.     Because consumers so heavily "rely on reviews when they're shopping online," the Federal Trade Commission has begun suing companies who post fake reviews of their products on online marketplaces.  Megan Henney, *FTC cracking down on fake Amazon reviews*, FOX BUSINESS, Feb. 28, 2019, https://www.foxbusiness.com/technology/ftc-cracking-down-on-fake-amazon-reviews (quoting a press release from the director of the FTC).

43.     Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a brand owner's online product listings.  According to one study, merely three negative online reviews will deter a majority (67%) of online consumers from purchasing a particular product.  *How many bad reviews does it take to deter shoppers?*, ECONSULTANCY, April 11, 2011, https://econsultancy.com/blog/7403-how-many-bad-reviews-does-it-take-to-deter-shoppers.

44.     Negative reviews may also hurt a brand's product placement in search results, further reducing the likelihood that customers will purchase the products.

**Sales of Poor Quality KONG Products on Online Marketplaces Have Caused Consumers to Write Numerous Negative Reviews of KONG and KONG Products**

45.     Consumers who purchase from anonymous, unauthorized sellers on online marketplaces frequently receive poor-quality products and leave negative reviews on product listings.  These negative reviews injure consumer perceptions of the brand's quality and reputation, as well as its placement in search results, ultimately causing the brand to suffer damage to its goodwill and lost sales.

46.     KONG has been the subject of numerous negative online marketplace reviews from customers who purchased KONG products of poor quality.   These customers complain of receiving defective, damaged, counterfeit, or otherwise low-quality products and give KONG products a poor rating, reducing the products' average rating and reputation.

47.     For example, on May 11, 2018, Amazon user "Andrea," complained that a KONG dog toy she purchased on Amazon was "old [or] wasn't stored correctly," and had exceedingly poor durability that caused it to last "all of about three hours" with her dog.

48.    On May 3, 2018, Amazon user "Yvonne Ebmeyer," complained that a KONG dog toy she purchased on Amazon was "SUPER DIRTY" when she received it.



49.    On March 16, 2018, Amazon user "S. Noble" complained that a KONG dog toy she purchased on Amazon had very poor durability while a KONG toy she had purchased in a store "was still going strong over a year later."   She questioned whether she had purchased a "knock off" product.

★☆☆☆☆ **Doesn't stack up to store bought Kong...**
By S. Noble on March 16, 2018
Size: X-Small | Package Type: Standard Packaging | Verified Purchase
Is this a knock off? I've read reviews of people that have had the same problem that I did: dog chewed the entire top of the Kong off in about a month. That's saying something; I have a yorkie poo...store bought one still going strong over a year later though. Don't buy.

50.    On October 7, 2017, Amazon user "Zippy" complained that a KONG dog toy he purchased on Amazon had a toxic, "petroleum / gasoline" odor that he had not experienced with other KONG toys he had purchased.

★☆☆☆☆ **TOXIC SMELL! Do not give to your dog.**
By Zippy on October 7, 2017
Size: Large | Package Type: Standard Packaging | Verified Purchase
This "Kong" smelled like petroleum / gasoline. I got it in June and left it outside for four months to off gas. It still smells like gasoline. It would be cruel to put peanut butter or a dog treat inside of this thing that smells so toxic. I've bought Kongs before and they didn't reek like this.

51.    On January 22, 2017, Amazon user "Suzanne K" complained that a KONG dog toy she purchased on Amazon had a very strong and offensive odor that she had not experienced with other KONG toys she had purchased in the past.   She asserted that she was "extremely disappointed" and was "very hesitant to purchase again."



52.     On April 13, 2018, Amazon user "Jeremy Forbis" reported that KONG products are "[d]angerous for your dog" because he had to take his dog into surgery to remove a KONG toy he had purchased on Amazon from his dog's intestines and stomach.  He also wrote that "like others who rated it poorly, I'm wondering if it was from a defective run or if it is a counterfeit version of the legitimate product."



53.     On April 11, 2016, an Amazon Customer reported that he believed he had purchased a "knockoff" KONG dog toy on Amazon because his dog chewed through the toy in only a week while products he purchased at a store had lasted almost six months.



54.     On March 14, 2017, an Amazon Customer complained that a KONG dog toy he purchased on Amazon "looked weird, like a knock-off" and lasted only a few hours while a KONG toy he had previously purchased at a store lasted almost a year.

55.     On April 25, 2018, Amazon user "Kayleigh" complained that a KONG dog treat she purchased on Amazon arrived in a broken container.



56.     On April 18, 2018, Amazon user "Rileigh's GMa" complained that a KONG dog treat she purchased on Amazon caused her dog to get sick, dry heave, and stop eating. Because of differences between the product and another product she purchased at a brick-and-mortar store, she reported that the Amazon product "had to be a fake."



57.     On November 14, 2017, Amazon user "marissa menzano" complained that a KONG dog treat she purchased on Amazon arrived in the wrong flavor.



58.     On January 8, 2016, Amazon user "Fat Guy in a Little Coat" complained that a KONG dog treat he purchased on Amazon had a liquid consistency rather than the paste consistency he had experienced with all of his prior purchases.



59.     On April 2, 2018, Amazon user "debugnlily" complained a KONG toy he purchased on Amazon was destroyed by his dog "in a day or so." He reported that this lack of

durability was far different from previous KONG products he had purchased and questioned whether he had received a "knock off."



60.    On December 26, 2016, Amazon user "Michael Pennington" complained that a KONG dog toy he purchased on Amazon was "already broken" when he received it and was then "torn apart almost immediately" by his dog.  He stated that "I expected better quality from this brand, especially when it advertises the toy as being extra tough."



61.    On July 2, 2015, Amazon user "van Gogh" complained that a KONG dog toy he purchased on Amazon "seemed defective from the start," and was destroyed by his dog after only 20 minutes of play.  He noted that previous KONG products he had purchased had lasted much longer and asked "[a]re there fake Kong toys on Amazon?"



62.    On January 18, 2018, Amazon user "Amanda Gargus" complained that a KONG product she purchased on Amazon arrived in damaged condition.



63.     On March 4, 2016, Amazon user "Amanda Bert" complained that a KONG product she purchased on Amazon was "damaged," "ripped," and "dirty" when it arrived.



64.     The foregoing reviews are only a small sample of the negative reviews of KONG products that have been posted on the Amazon platform.

### KONG Has Implemented Quality-Control Procedures to Combat the Problems Presented by Online Marketplaces, Protect the Value of the KONG Trademarks, and Ensure Customers Receive the Genuine, High-Quality Products They Expect from KONG

65.     The above reviews show how sales of poor-quality KONG products disappoint KONG's consumers, endanger the health and safety of consumers' pets, and cause significant harm to KONG's reputation and goodwill.  To protect itself and consumers from these harms, KONG has implemented a quality-control program that applies to all of its Authorized Sellers, including sellers that sell in a brick-and-mortar retail setting and sellers that sell online.

66.     The goal of this program is to ensure that consumers who purchase KONG products receive products that feature all of the special characteristics consumers have come to expect from products sold under the KONG name, especially safety and quality.

67.     The program seeks to minimize the likelihood that poor-quality products will reach consumers.  By preventing consumers from receiving poor-quality products, the program protects

consumers from confusion and unsafe products as well as the value and goodwill associated with the KONG brand.

68.     KONG abides by its quality-control procedures.  Moreover, as discussed below, KONG requires its Authorized Sellers to abide by the quality-control requirements and audits its Authorized Sellers to ensure that they comply.

69.     KONG's ability to exercise its quality controls has a direct impact on the health and safety of consumers and their pets, who face risks by coming into contact with or ingesting malfunctioning, expired, or improperly stored or handled products.

70.     KONG's ability to exercise its quality controls is essential to maintaining the integrity, safety, and quality of KONG products, as well as the value of the KONG Trademarks and other intellectual property.

**Authorized Sellers Must Adhere to KONG's
Quality-Control and Customer-Service Requirements**

71.     KONG maintains strict quality controls over KONG products by selling them exclusively to Authorized Sellers.

72.     To prevent unauthorized third parties from acquiring and reselling KONG products, the KONG Rules permit Authorized Sellers to sell products to authorized customers only, including pet-specialty shops and other authorized resellers, as well as end users who are the ultimate consumers of the products and do not intend to resell them.

73.     The KONG Rules require Authorized Sellers to adhere to KONG's quality controls.

74.     To ensure that customers receive the genuine, high-quality products they expect from KONG, the KONG Rules require that Authorized Sellers inspect all products for damages, defects, odors, and other non-conformance and not sell any defective KONG products.  Authorized

Sellers must also inspect their inventory at regular intervals for expired or soon-to-be expired products and remove them from inventory.

75.     In addition, the KONG Rules require Authorized Sellers to exercise due care in storing and handling KONG products, including storing them in a cool, dry place, away from direct sunlight, extreme heat, and dampness.  Poor storage of KONG products can result in reduced durability and other problems that customers have frequently complained about in their online marketplace reviews of KONG products.  *See, e.g., supra* ¶¶ 47-51, 53-55, 58-63.  Upon information and belief, many negative customer complaints about durability of KONG products are attributable to poor storage practices.

76.     To avoid consumer confusion and ensure that customers receive genuine KONG products, the KONG Rules prohibit Authorized Sellers from relabeling, repackaging, or altering KONG products without written consent from KONG.  Authorized Sellers must not remove, translate, or modify the contents of any label or literature accompanying KONG products.  Further, Authorized Sellers are prohibited from tampering with, defacing, or otherwise altering any identifying information on KONG products, including lot and batch codes and UPCs.

77.     KONG also ensures that consumers receive safe products by requiring that Authorized Sellers assist with recalls and other consumer-safety information efforts.

78.     The KONG Rules also require Authorized Sellers to provide certain services to their customers.  Authorized Sellers must familiarize themselves with the features of all KONG products kept in their inventory so that they can advise customers on the selection and safe use of KONG products and share any applicable warranty, guarantee, or return-policy information.

79.     Following the sale of genuine KONG products, Authorized Sellers must provide ongoing support to consumers and prompt replies to their inquiries.

80.     Authorized Sellers agree to permit KONG to audit and monitor their activities to ensure their compliance with KONG's quality-control and customer-service requirements, including by permitting inspection of their facilities and records relating to KONG products.

81.     KONG's quality-control requirements are legitimate and substantial and have been implemented to facilitate KONG's control over the quality of goods manufactured and sold under the KONG Trademarks.  These controls enable KONG to protect consumers and the value and goodwill associated with the KONG Trademarks.

82.     KONG's quality-control requirements are material because they are designed to protect consumers and prevent them from receiving poor-quality products that could harm them or their pets.

83.     Consumers find it material and relevant to their purchasing decisions to know whether a KONG product is being sold by an Authorized Seller that is subject to KONG's quality-control requirements, or whether the product is being sold by an unauthorized seller who is not subject to, and does not abide by, KONG's quality controls and over whom KONG cannot exercise quality control.

**Given the Flood of Poor-Quality Products on Online Marketplaces and Consumers' Inability to Inspect Products Before Purchasing Them Online, KONG Imposes Additional Requirements on Its Authorized Sellers Who Sell Online**

84.     Given the greater risks posed by online sales, KONG imposes additional quality-control requirements with respect to such sales.

85.     The KONG Rules allow Authorized Sellers to sell KONG products only through "Permissible Websites" and "Authorized Websites."  These rules allow KONG to oversee all Authorized Sellers who sell KONG products online.

86.     Authorized Sellers who maintain physical retail locations providing face-to-face customer interaction are permitted to sell KONG products to end user through Permissible Websites.  The KONG Rules define a "Permissible Website" as a website that: (1) is operated by an Authorized Seller in the Authorized Seller's name; (2) lists the Authorized Seller's full legal name, mailing address, telephone number, and email address; and (3) does not give the appearance that is operated by KONG or any third party.  Permissible Websites do not include storefronts on online marketplace websites like Amazon.

87.     An "Authorized Website" is a website that KONG has specifically approved an Authorized Seller to use to sell KONG products. Authorized Sellers cannot sell on Authorized Websites unless and until they receive KONG's written approval.  Authorized Sellers who do not meet the requirements for being able to sell on a Permissible Website (*i.e.*, those that do not maintain a physical retail location providing face-to-face consumer interaction) may sell KONG products online only through an Authorized Website.

88.     To submit a proposed Authorized Website for consideration by KONG, an Authorized Seller must submit an application that provides various items of information about its business and the website(s) where it wishes to sell KONG products.  KONG vets its Authorized Sellers that submit applications as well as the websites proposed by these sellers to ensure that they meet KONG's criteria and will represent the KONG brand properly.  This vetting includes review of applicants' length of time in business, general knowledge of the pet industry, Google advertising, social media presence, and other types of products and brands sold by an applicant.

89.     For KONG to exercise its quality controls over products sold online, it must know what websites its Authorized Sellers are selling on and under what names.  Accordingly, the KONG Rules prohibit Authorized Sellers from selling anonymously online and instead require

them to state their business name and current contact information on all websites where they sell. This requirement allows KONG and consumers of KONG products to address any quality issues or negative reviews that arise. This requirement also allows KONG to protect the public from the sale of poor quality and counterfeit KONG products because it allows for easy detection of any Authorized Seller that sells poor quality or counterfeit goods. Numerous customers purchasing KONG products on Amazon have complained of purchasing products from anonymous sellers that the customers believed to be counterfeit. *See, e.g., supra* ¶¶ 49, 52-54, 56, 59, 61.

90.     Authorized Sellers that sell KONG products on Permissible Websites or Authorized Websites must also adhere to additional requirements under the KONG Rules.

91.     For example, Authorized Sellers that sell on Permissible Websites or Authorized Websites must use images of KONG products provided or approved by KONG and keep product descriptions up to date.

92.     Authorized Sellers that sell on Permissible Websites or Authorized Websites must agree to not represent or advertise any KONG product as "new" that has been returned, repackaged, or otherwise been altered by a customer. Typically, if a customer returns a product that was purchased through a third-party online-marketplace site, the online marketplace will repackage the product and allow it to be relisted as "new." The KONG Rules prohibit Authorized Sellers from allowing this practice, to ensure that customers receive the high-quality KONG products that customers expect.

93.     Unless otherwise approved by KONG, Authorized Sellers selling on Permissible Websites or Authorized Websites may not use any third-party fulfillment service to store inventory or fulfill orders for KONG products. This requirement ensures that the specific products that the Authorized Seller has that meet KONG's quality standards will be those that are shipped to the

customer in fulfillment of an order, rather than other products that are outside of KONG's quality controls.

94.     Authorized Sellers selling on Permissible Websites or Authorized Websites must comply with all applicable data security, accessibility, and privacy requirements.

95.     In addition, Authorized Sellers who are approved to sell on Authorized Websites may sell KONG products only on the websites and under the name(s) specifically approved by KONG.  At KONG's request, Authorized Sellers must provide access to and copies of all web pages that make up Authorized Websites where Authorized Sellers are selling KONG products.

96.     Authorized Websites must have a mechanism for receiving customer feedback, and Authorized Sellers who sell on Authorized Websites must take appropriate steps to address any feedback received.  Authorized Sellers must also: (i) keep copies of all information related to customer feedback regarding KONG products and Authorized Sellers' responses; (ii) provide this information to KONG upon request; and (iii) cooperate with KONG in investigating negative online reviews related to sales of KONG products.

97.     In light of the unique quality-control challenges presented by online marketplaces like Amazon, and to further KONG's efforts and ability to assure product quality and adherence to KONG's quality-control standards, protect the value and goodwill associated with the KONG brand, and to prevent consumer confusion, KONG has approved only a small number of Authorized Sellers to sell on the Amazon marketplace ("Authorized Amazon Resellers").  KONG approved its Authorized Amazon Resellers after a substantial vetting of their business and the sellers' agreement to adhere to quality-control standards that are even more extensive than the standards that KONG requires of its Authorized Sellers that sell on other websites.

98.    KONG has approved only a small number of Authorized Amazon Resellers so that it can closely monitor the sellers and the reviews they receive from customers, promptly address any product-quality issues, and protect the public from counterfeiters.

99.    Among other additional quality controls that Authorized Amazon Resellers must follow pursuant to their agreements with KONG, Authorized Amazon Resellers that are using Amazon's "Fulfillment by Amazon" service must require Amazon to not commingle their inventory of KONG products with any products belonging to any other seller.  This requirement is crucial to ensuring that consumers who purchase products through Authorized Amazon Resellers receive genuine KONG products.  By default, Amazon's policy is to commingle products from different third-party sellers using Amazon's Fulfillment by Amazon service, such that a consumer ordering from one seller could receive a product provided to Amazon by an entirely different seller.  In that case, the consumer may receive a poor-quality product from a seller even if the seller the consumer purchased the product from followed quality controls prior to shipping the product to Amazon's fulfillment centers.  The consumer may also receive a counterfeit or fake product due to commingling.  KONG's Authorized Amazon Resellers must affirmatively opt out of commingling and may bear additional costs for doing so.   This requirement to prohibit commingling is crucial to ensuring that consumers who purchase products from Authorized Amazon Resellers receive genuine KONG products that have been subject to KONG's quality controls.

100.    Authorized Amazon Resellers that are using Amazon's Fulfillment by Amazon service must also affirmatively opt out of Amazon's "FBA Repackaging Service" service.  If Authorized Amazon Resellers do not opt out of Amazon's "FBA Repackaging Service," Amazon

will allow products that were returned and previously opened by customers to be resold as "New" through Authorized Amazon Resellers' storefronts.

101.    Authorized Amazon Resellers who use Amazon's Fulfillment by Amazon service also conduct a rigorous, four-step inspection process of all KONG products in their inventories. This process includes inspections of pallets and cases, multiple inspections of individual products for damage, signs of tampering, and other defects, inspections to confirm that no products are expired or within 180 days of their expiration date, a weight integrity check to confirm that identical products have the same weight, and checks to confirm that products adhere to KONG's Product Specification Sheets for each KONG product.  The four-step inspection process includes multiple redundant steps, to minimize the likelihood that any product flaw is overlooked.  Any flawed products that are discovered are removed from inventory and are not sold to customers.

102.    Authorized Amazon Resellers who use Amazon's Fulfillment by Amazon service also place all KONG products in polypropylene bags before they are shipped to Amazon fulfillment centers.  Customers purchasing KONG products on Amazon have complained of purchasing products that arrived dirty, damaged, or with a strong odor.  *See, e.g., supra* ¶¶ 48, 50-51, 60, 62-63.  The purpose of the polypropylene bags is to prevent these flaws from occurring in KONG products sold by Authorized Amazon Resellers through Amazon's Fulfillment by Amazon service, where frequent transit can cause products to suffer defects that do not occur when products are purchased off shelves at brick-and-mortar retail stores.

103.    Authorized Amazon Resellers also agree to cooperate with any product-tracking system implemented by KONG, and must respond to customer communications within 24 hours.

104.    The additional quality-control requirements that KONG imposes on its Authorized Amazon Resellers are legitimate and substantial and have been implemented to allow KONG to

carefully control the quality of KONG products that are sold Amazon and quickly address any quality issues that arise.

105.     KONG's quality controls are also material, as they have been implemented to ensure that consumers who purchase KONG products on Amazon receive genuine, high-quality KONG products that abide by KONG's quality controls.  Consumers purchasing KONG products on Amazon would find it relevant to their purchasing decision to know whether the product they are buying is vended by an Authorized Amazon Reseller who is subject to, and abides by, KONG's quality controls.

### KONG Monitors and Audits Its Authorized Sellers to Ensure They Comply with KONG's Quality-Control Requirements

106.     To ensure that KONG's Authorized Sellers who sell in brick-and-mortar stores are adhering to KONG's quality control requirements, KONG regularly conducts and oversees in-store visits of Authorizer Sellers' retail establishments to evaluate their compliance with KONG's quality-control requirements.  These in-store visits occur multiple times each month and carried out by KONG employees as well as contracted sales agencies.  During these visits, examiners check to see if: (i) KONG products or their packaging are damaged or defective; (ii) KONG products are properly displayed and represented to consumers; and (iii) store associates are familiar with KONG products and the benefits of the products.

107.     KONG also regularly monitors and audits Authorized Sellers who sell KONG products on Permissible Websites or Authorized Websites, to ensure that these sellers and their websites are complying with KONG's quality-control requirements.  KONG carries out these auditing and monitoring actions pursuant to an internal program called the KONG Online Quality Control Auditing Program ("Auditing Program").

108.     As part of its Auditing Program, KONG examines every Approved Website and a rotating sample of Permissible Websites each month to ensure that the Authorized Sellers who sell through these websites are complying with the KONG Rules.  During these examinations, KONG checks to make sure that, among other requirements, Authorized Websites: (i) clearly state an Authorized Seller's legal name or registered fictitious business name and provide contact information for the Authorized Seller; (ii) do not give the appearance that they are operated by KONG or a third party; (iii) do not display any content that could be detrimental to the KONG brand; (iv) do not make any representations regarding KONG products that are misleading; (v) exclusively contain images of KONG products and product descriptions that are supplied or authorized by KONG and up-to-date; and (vi) have a mechanism through which customers can provide feedback.

109.     Each month, KONG also inspects online reviews of KONG products and Authorized Sellers that appear on Authorized Websites.  If KONG discovers reviews asserting that Authorized Sellers provided poor customer service, sold poor-quality KONG products, or otherwise did not adhere to the quality control and customer service requirements that all Authorized Sellers are required to follow, KONG communicates with the responsible Authorized Sellers to determine the cause(s) of the negative reviews, take any necessary corrective action, and secure the removal of negative reviews if possible.

110.     Each month, KONG also conducts a test purchase of a KONG product from every Authorized Amazon Reseller and a rotating sample of Authorized Websites and Permissible Websites.  If KONG discovers any quality problems in purchased products or discovers that an Authorized Seller is otherwise not following the quality control requirements that Authorized Sellers must follow when selling on Authorized Websites or Permissible Websites—for example,

by altering product packaging or fulfilling product orders through an unapproved third-party fulfillment service—KONG communicates with the responsible Authorized Seller and takes any necessary corrective action.

111.    Through its Auditing Program, KONG may visit the facilities of its Authorized Sellers to confirm that all of its quality control requirements are being followed and that Authorized Sellers are not selling any counterfeit KONG products.

112.    If KONG discovers that an Authorized Seller is selling KONG products of poor quality or otherwise not adhering to KONG's quality control or customer service requirements, KONG conducts an investigation to determine the source of the problem.  The KONG Rules require that Authorized Sellers cooperate with KONG's investigation, permit KONG to inspect their facilities and records relating to KONG products, and disclose all information about where they obtained KONG products.  Based on what its investigation reveals, KONG has the right to cease selling its products to an Authorized Seller and to suspend or terminate its status as an Authorized Seller of KONG products.

**Genuine KONG Products Come with the KONG Satisfaction Guarantee; Defendants' Products Do Not**

113.    KONG toy and treat products purchased from Authorized Sellers also come with a satisfaction guarantee offered by KONG ("Satisfaction Guarantee").  Under the Satisfaction Guarantee, a customer can receive a refund or a manufacturer's coupon for a product replacement if the customer is dissatisfied with a KONG toy or treat product for any reason and contacts KONG within 60 days of the date of purchase.

114.    KONG extends the Satisfaction Guarantee only to products that were sold by sellers that are subject to KONG's quality controls.  Because products sold by unauthorized sellers are not subject to KONG's quality controls and KONG cannot ensure the quality of such products,

28

KONG does not extend the Satisfaction Guarantee to products sold by unauthorized sellers, including Defendants. The full terms of the Satisfaction Guarantee can be viewed at https://www.kongcompany.com/guarantee.

115. The Satisfaction Guarantee is a material component of genuine KONG products. Consumers who purchase KONG products with the Satisfaction Guarantee receive the peace of mind that they are receiving a high-quality product, that KONG stands behind the product, and that they can receive a refund or product replacement from KONG if they are unsatisfied for any reason.

116. Consumers would find it material and relevant to their purchasing decision to know whether the KONG product they are buying is covered by the Satisfaction Guarantee. If a consumer knew that a KONG product did not come with the Satisfaction Guarantee, the consumer would be less likely to purchase the product.

**Following the Implementation of KONG's Quality-Control Program, Unauthorized Sellers Who Are Outside KONG's Quality Controls Have Continued to Sell Poor Quality Products and Caused Consumers to Write Negative Reviews of KONG and KONG Products**

117. Following KONG's implementation of its quality-control program, customers who purchase on online marketplaces have continued to leave extremely negative reviews of KONG and KONG products. Customers have continued to leave these reviews because many sellers on online marketplaces are unauthorized sellers of KONG products who are not subject to and do not follow the quality controls that KONG requires its Authorized Sellers to follow. Customers who purchase from these unauthorized sellers complain of receiving defective, damaged, counterfeit, or otherwise low-quality products and give KONG products a poor rating, reducing the products' average rating and hurting their placement in search results. These reviews harm KONG's reputation and goodwill and cause it to lose sales.

118.    For example, on December 1, 2019, an Amazon customer complained that a KONG dog toy she purchased on Amazon was "completely destroy[ed]" by his 15-pound dog in less than an hour.  She reported that she was "[v]ery disappointed."



119.    On November 21, 2019, Amazon user "Anonymous" reported that she purchased a "Fake KONG product" on Amazon that was "destroyed in minutes."



120.    On November 17, 2019, Amazon user "Dusty Rose Bos" reported that a KONG dog toy she purchased on Amazon was "in pieces within a day" after she gave it to her dog and that it was not the "typical durable Kong I'm familiar with."



121.    On November 15, 2019, Amazon user "Paul" complained that a KONG dog toy he purchased on Amazon was not of the same durability as other toys he had purchased in retail stores:

"I purchased this thinking it was the same as you get in the big pet stores.  It was not.  The one from the pet store was more rubber and lasted a long time.  This one is almost like a type of soft plastic that was easily chewed up in a few weeks."



122.    On November 10, 2019, Amazon user "Matt Vermeulen" complained that a KONG product he purchased on Amazon had a strong chemical odor that had not been present in previous KONG products he had purchased:  "I have bought a lot of Kong's in my life and have never had any issues.  This is the first time I have ever had one smell like chemicals not rubber.  The smell is so STRONG I could smell it before I even opened the Amazon envelope it came in.  It is currently sitting in the sink in hot soapy water and I can smell it as soon as I walk into the kitchen.  I should note, I am not someone with a keen sense of smell.  I will not be giving this to my dog."



123.    On November 1, 2019, Amazon user "Bill" wrote that "Kong is not as tough as it used to be" after he purchased a KONG product on Amazon that had much worse durability than previous products he had purchased.  He reported that "[t]hey are not making the Kong like they used to…I had a Kong that outlasted my Rottweiler (110lbs) and my Viszla (90lbs).  I ordered a new Kong for my 1 year old mutt (35 lbs) and she had it in pieces (which she ate and then threw up) within 2 days of it's arrival into our household.  Anyone else having this issue with the product?"  He added: "don't know if manufacturing changed but disappointed."



124.     On October 28, 2019, Amazon user "Patrick T McCutcheon" reported that a product he purchased on Amazon was "Fake KONG, not a real KONG product. Flimsy and fell apart immediately."



125.     On October 25, 2019, Amazon user "Ricardo P. Moreira" complained that a KONG dog toy he purchased on Amazon was "[n]ot the same quality" as a KONG product he had previously purchased: "This thing was all to pieces in less than 4 days.  Not the same quality that used to be Or just a cheap copy.  I was concern that my dog swallow over half of it before I realized he was able to break it.  I had a original Kong that last for years this not the same quality.  Be aware can cause serious injury or death to your dog."



126.     On October 8, 2019, Amazon user "Steven Powell" complained that a KONG dog toy he purchased on Amazon was "destroyed in less than 5 minutes" by his "10lb dachshund puppy."

32



127.    On October 8, 2019, an Amazon customer reported that a KONG product she purchased "[s]mells horrible like chemicals."



128.    On September 26, 2019, Amazon user "AmazonShopper91" reported she purchased a KONG product on Amazon containing rubber that "had a very strong odor that cannot be washed off.  I don't think this is even safe to be in the mouth of a dog.  I just threw it away."



129.    On September 9, 2019 an Amazon user complained that a product she purchased on Amazon was "probably not real Kong" and "lasted 5 days."





**Crappy Kong**

September 9, 2019

Size: Small | Package Type: Standard Packaging | **Verified Purchase**

This is probably not real Kong lasted 5 days

130.    On August 29, 2019, Amazon user "Clarice" complained that a KONG product she purchased on Amazon "[c]ame in the mail with dirt marks all over it.  Tried to wash it off but they're pretty intact, like they've dragged across gravel . . . .  The appearance is also pretty unacceptable.  The entire thing is covered in haphazardly cut rubber edges, and the kong I received just screams "DEEEFEEEEECT!"  The kongs I've seen sold in stores do NOT look like this, so idk what the hell happened or if these are fake . . . . poor quality for the price I paid.  Definitely not worth it."





131.    On August 26, 2019, Amazon user "Lizzy Ultman" complained that she purchased a KONG product on Amazon that had an offensive odor: "Terrible- the smell was really bad, like burnt tires.  Threw it away after cleaning it and air drying it.  The smell was just as strong as the day I got it!"



132.    On August 21, 2019, Amazon user "S. Pyle" complained that a KONG product she purchased on Amazon "Has to be a knock off!" and urged customers to not "[waste] your money." She explained that "I've owned many Kong toys over 10 years & this toy didn't last five minutes."



133.    On August 19, 2019, an Amazon customer complained that a KONG dog toy product she purchased on Amazon was broken when she received it.



134.    On July 31, 2019, Amazon user "Denice M. Thomas" complained a KONG dog toy product she purchased on Amazon was destroyed by her dog "in about 3 minutes."



135.    On June 14, 2019, Amazon user "Hornist Matt" complained that a KONG toy product he purchased on Amazon was probably counterfeit because the toy was "shredded" by his dog after 30 seconds of use.



136.    The foregoing reviews are only a small sample of the negative reviews of KONG products that have been posted on the Amazon platform since KONG implemented its quality-control program.

137.    Amazon does not allow product reviews to identify the seller that sold the product that is the subject of the product review.  Given that Defendants are selling a high volume of products bearing the KONG Trademarks on Amazon and are not subject to KONG's quality controls, however, it is likely that some of the foregoing negative reviews were written by customers who purchased products bearing the KONG Trademarks from Defendants.

**Defendants are Neither Authorized Sellers Nor Authorized Amazon Resellers and are Illegally Selling Products Bearing the KONG Trademarks**

138.     In the course of monitoring online listings of KONG products, KONG discovered a high volume of products bearing the KONG Trademarks being sold illegally by Defendants on Amazon under the storefront name "JSS SUPPLY" and on eBay under the storefront name "jsssupply."

139.     Defendants are not Authorized Sellers of KONG products and do not comply with the KONG Rules.

140.     Defendants are also not Authorized Amazon Resellers of KONG's products and do not comply with KONG's additional requirements for Authorized Amazon Resellers.

141.     KONG has not approved Defendants to be Authorized Amazon Resellers of KONG products.

142.     Upon information and belief, Defendants' business does not satisfy the online-seller history, presence, experience, and other criteria used by KONG to vet and evaluate Authorized Amazon Resellers.

143.     Despite not being approved as Authorized Sellers or Authorized Amazon Resellers, Defendants have sold, and continue to sell, products bearing the KONG Trademarks on their "JSS SUPPLY" Amazon storefront and "jsssupply" eBay storefront.

**Defendants Are Selling Damaged, Defective, Previously Used, and Other Poor Quality Products Through Their Amazon Storefront**

144.     Defendants have sold numerous products through their "JSS SUPPLY" Amazon storefront that are damaged, tampered with, previously used, improperly stored, improperly packaged, different from what customers had ordered, or of otherwise poor quality.  Evidence of these sales can be seen by viewing reviews that customers have written of Defendants' "JSS

SUPPLY" Amazon storefront.  Customer reviews also show that Defendants are providing poor customer service, including cancelling product orders without explanation and delivering products late.

145.    For example, on July 10, 2019, Amazon user "Laurene" complained that, within a half hour, her dog had "already put a hole" in a product she purchased from Defendants and "started pulling out the stuffing."



146.    On July 23, 2019, Amazon user "Sheila Johnson" complained that, after purchasing a product from Defendants that was "[a]dvertised as a dog product," she "received the same product for a cat with catnip and a bell.  Our dog could not use it."



147.    On July 24, 2018, an Amazon customer complained that she received a product from Defendants that was previously used.



148.    On June 28, 2019, an Amazon customer reported that Defendants had misled her because they advertised products in a picture that depicted four toys but sent only one toy.



149.    On September 27, 2018, Amazon user "Lawrence A. Tyler" complained that he ordered a pack of two products from Defendants but "[r]eceived only one."

> ⭐☆☆☆☆ *"Ordered pack of two. Received only one."*
>
> By Lawrence A. Tyler on September 27, 2018.

150.    On November 24, 2019, Amazon user "Krunner" complained that, after ordering products from Defendants, "[t]he order was cancelled and not by me.  We received no notice that this cancelled.  Very disappointed in this service."

> ⭐☆☆☆☆ *"The order was cancelled and not my me. We received no notice that this cancelled. Very disappointed in this service."*
>
> By Krunner on November 24, 2019.

151.    On May 2, 2019, Amazon user "S Schmidt" complained that, after ordering from Defendants, he never received a product.

> ⭐☆☆☆☆ *"Order did not arrive on time. Actually still have not gotten it... this is the second time this product has had this issue... i even went with a different seller this time. Everything else ive ever ordered on Amazon came when expected but my darn reptisun bulbs.... i rely on these bulbs for the health of my pet and this time i had to order cause the bulb burnt out."*
>
> Read less
>
> By S Schmidt on May 2, 2019.

152.    On March 31, 2019, Amazon user "Tanya B." complained that she ordered a product from Defendants but had not received it.

> ⭐☆☆☆☆ *"I have not received product."*
>
> By Tanya B. on March 31, 2019.

153.    On March 3, 2019, Amazon user "Allyson" complained that, after purchasing a product from Defendants' Amazon storefront, she received a product that was delivered by Target. She reported that she was "still not sure why it was sent by Target and from a stranger's address…"

> ⭐☆☆☆☆ *"I received this item, but it was delivered by Target and the packaging was all Target branded. The invoice inside was also a Target invoice, showing my delivery address but a different billing address. I contacted Target and the seller thinking this shipment was in error, but they both assured me this was my order. Still not sure why it was sent by Target and from a stranger's address..."*
>
> Read less
>
> By Allyson on March 3, 2019.

154.    Additional other customers have complained of receiving products from Defendants that were damaged, improperly packaged, previously used, or otherwise different from what customers had ordered.  Customers have also complained that Defendants "solicit[] orders

for product they can't fulfill" and provided poor customer service after customers paid for products that were never delivered or were delivered much later than Defendants promised.

155.    These complaints about Defendants are typical of the complaints made about products sold and customer service provided by unauthorized sellers.  KONG allows its products to be sold only by Authorized Sellers, who are subject to and must follow the quality-control and customer-service requirements in the KONG Rules, to prevent customers who purchase KONG products from suffering experiences like those described in the above complaints about Defendants.

**Defendants Do Not Abide by, and Interfere With, KONG's Quality Controls and Customer-Service Requirements**

156.    Defendants do not abide by KONG's quality-control and customer-service requirements that KONG requires Authorized Sellers to follow.

157.    Defendants do not comply with KONG's quality-control requirements because they have neither provided KONG with their business information nor given KONG an opportunity to vet them to determine if they meet KONG's high standards for Authorized Amazon Resellers.

158.    Defendants do not comply with KONG's quality-control requirements because they sell on Amazon without KONG's authorization or oversight.

159.    Defendants also do not comply with KONG's quality-control requirements—and interfere with KONG's quality controls—because they have not disclosed to KONG where they acquire products that bear the KONG Trademarks and have not given KONG the right to audit and inspect their facilities and records.  As a result, KONG cannot determine if any products Defendants are selling or have sold are subject to a recall or consumer-safety information effort, and it also cannot obtain Defendants' assistance with any recall or consumer-safety information efforts that may arise related to any products they are selling or have sold in the past.

160.    Customer reviews of Defendants' Amazon storefront show that Defendants have sold products that are damaged, previously used, different from what Defendants had advertised, or of otherwise poor quality.  *See, e.g., supra* ¶¶ 145-149, 154.  KONG also purchased a product bearing the KONG Trademarks from Defendants' Amazon storefront that was only 60 days from its expiration date when KONG received it.  Accordingly, upon information and belief, Defendants are not carrying out the quality-control inspection requirements that KONG requires Authorized Sellers to follow and are not removing damaged, previously used, near-expired, or other poor-quality products bearing the KONG Trademarks from their inventory.  Instead, Defendants are selling products bearing the KONG Trademarks that are damaged, previously used, expired or near-expired, or of otherwise poor quality.   These sales cause customers to write highly negative reviews of KONG products in which they complain of receiving poor quality products, which harm KONG's reputation and hurt the placement of KONG products in search results.

161.    In addition, Defendants also do not comply with KONG's quality-control requirements because they store some of their products at Amazon fulfillment centers but, upon information and belief, have not opted out of Amazon's "Repackaging" service.  This means that Defendants are allowing products that are returned to Amazon to be repackaged and placed back in Defendants' inventory of products as "new' products.  This practice results in consumers, who believe they are purchasing new products from Defendants, actually receiving returned products that may have been previously used and/or tampered with.

162.    Defendants do not comply with KONG's quality-control requirements with respect to storage conditions because, upon information and belief, Defendants do not warehouse their products in a cool, dry place, away from direct sunlight, extreme heat, and dampness.  As a result,

upon information and belief, Defendants sell products bearing the KONG Trademarks that have poor durability and other defects resulting from poor storage.

163.    By purchasing products from Defendants' Amazon storefront, KONG has confirmed that Defendants do not comply with KONG's additional quality-control requirements relating to its Authorized Amazon Resellers who use Amazon's Fulfillment by Amazon service because they do not place the products they sell in polypropylene bags.  In addition, upon information and belief, Defendants do not conduct the rigorous four-step inspection process that KONG's Authorized Amazon Resellers follow.  Indeed, Defendants *cannot* follow this inspection process because they do not have access to KONG's Product Specification Sheets that KONG's Authorized Amazon Resellers refer to when inspecting KONG products.

164.    Defendants do not comply with KONG's quality-control requirements with respect to storage conditions because they store some of their products at Amazon fulfillment centers and, upon information and belief, allow their inventory to be commingled with other sellers' inventory. As a result, even if Defendants were to implement quality-assurance procedures comparable to those KONG requires of Authorized Sellers, Defendants would have no way to ensure that their products are those actually being shipped to customers in fulfillment of their orders.

165.    Defendants' failure to abide by the KONG Rules prevents KONG from exercising control over the quality of products Defendants sell bearing the KONG Trademarks.  KONG cannot audit Defendants to ensure they are complying with KONG's quality controls or close Defendants' account for failing to comply with KONG's quality-control requirements.

166.    Defendants' failure to comply with the KONG Rules also interferes with KONG's quality controls because, unlike with its Authorized Amazon Resellers that KONG is able to

monitor through monthly test purchases, KONG cannot take any action to correct quality problems it discovers or is alerted to in products sold by Defendants.

167.    Because Defendants have not agreed to comply with KONG's quality-control requirements, including its audit procedures, KONG has no way to confirm that Defendants are qualified or trained to accurately describe, demonstrate, and sell the products bearing the KONG Trademarks in their inventory, or to advise customers on how to use KONG products safely and properly.   Accordingly, Defendants may not provide the informed customer service regarding KONG products that KONG requires Authorized Sellers to provide.

168.    Customer reviews of Defendants' Amazon storefront show that Defendants have provided poor customer service, including cancelling product orders without explanation and delivering products late.   *See, e.g.*, *supra* ¶¶ 150-152, 154.   Accordingly, upon information and belief, Defendants are not providing the ongoing support, advice, and responses to customer inquiries that KONG requires its Authorized Sellers to provide to customers who purchased KONG products.

169.    Because Defendants have not agreed to comply with KONG's quality-control requirements, including its audit procedures, KONG has no way to confirm that Defendants take appropriate steps to address negative reviews from customers.   Defendants do not cooperate with KONG in investigating negative product reviews as Authorized Sellers are required to do.

**Defendants Are Infringing the KONG Trademarks by Selling Products Bearing the KONG Trademarks That Are Not Subject to, Do Not Abide by, and Interfere with KONG's Quality Controls and Customer-Service Requirements**

170.    For all of the reasons set forth above, the products Defendants sell bearing the KONG Trademarks fail to adhere to the extensive and legitimate quality controls that KONG

exercises over products bearing the KONG Trademarks to protect consumers and its brand goodwill.

171.    The products sold by Defendants bearing the KONG Trademarks are not subject to, do not abide by, and interfere with KONG's quality controls and customer-service requirements.

172.    Because the products Defendants sell are not subject to, do not abide by, and interfere with KONG's quality controls and customer-service requirements, those products are materially different from genuine KONG products.

173.    Because the products Defendants sell are not subject to, do not abide by, and interfere with KONG's quality controls and customer-service requirements, the products Defendants sell are not genuine KONG products.

174.    Defendants' unauthorized sale of products bearing the KONG Trademarks is likely to, and does, create consumer confusion because consumers who purchase products from Defendants believe they are purchasing genuine KONG products when, in fact, they are not.

175.    Defendants' unauthorized sale of products bearing the KONG Trademarks infringes the KONG Trademarks and diminishes their value.

176.    Despite these facts, Defendants have sold, and continue to sell, products bearing the KONG Trademarks through their Amazon storefront without KONG's consent.

177.    Defendants, through their highly interactive storefronts on Amazon and eBay, sell infringing products bearing the KONG Trademarks to consumers located in Colorado through the regular course of business.

**Defendants Are Infringing on the KONG Trademarks by Selling Products Bearing the KONG Trademarks That Do Not Come with the Satisfaction Guarantee**

178.    As set forth above, genuine KONG toy or treat products purchased from Authorized Sellers that comply with KONG's quality controls come with KONG's Satisfaction Guarantee.

179.    Because Defendants are not Authorized Sellers of KONG products and do not comply with KONG's quality controls, the products they sell bearing the KONG Trademarks do not come with the Satisfaction Guarantee.

180.    Because the products Defendants sell do not come with the Satisfaction Guarantee, they are materially different from genuine KONG products.

181.    Defendants' unauthorized sale of products bearing the KONG Trademarks is likely to, and does, create customer confusion because customers who purchase products bearing the KONG Trademarks from Defendants believe they are purchasing genuine KONG products that come with the Satisfaction Guarantee when, in fact, they are not.

**Defendants Are Falsely Representing That the Products They Sell Come with the Satisfaction Guarantee**

182.    In addition to infringing on the KONG Trademarks, Defendants are also falsely advertising that the products they sell come with the Satisfaction Guarantee

183.    Defendants are selling products bearing the KONG Trademarks on Amazon product listings that state that products are covered by the Satisfaction Guarantee.  For example, Defendants are listing the following product that specifically states that it comes with the Satisfaction Guarantee, which can be seen at

https://www.amazon.com/Kong-Rubber-Flyer-Large-Red/dp/B000BRTADK/ref=sr_1_1?m=A1WFD782PGXDEH&marketplaceID=ATVPDKIKX0DER&qid=1576171337&s=merchant-items&sr=1-1.

A screenshot of this listing, showing Defendants' "JSS SUPPLY" storefront as the seller and including the specific representation that the product comes with the Satisfaction Guarantee, is set forth here:



184.    As set forth above, the products Defendants sell do not come with the Satisfaction Guarantee.   Thus, by representing to consumers that the products they sell come with the Satisfaction Guarantee, Defendants are falsely advertising the products they are selling.

**KONG Has Attempted to Stop Defendants' Illegal Sale of Products Bearing the KONG Trademarks, but Defendants Continue to Willfully Infringe the KONG Trademarks**

185.    After KONG discovered products bearing the KONG Trademarks being sold illegally on the "JSS SUPPLY" and "jsssupply" storefronts, KONG conducted an investigation to determine the operators of the storefronts because neither storefront provided any contact information.

186.    Through its investigation, KONG determined that JSS Supply and Smith are responsible, at least in part, for the operation of the "JSS SUPPLY" Amazon storefront and "jsssupply" eBay storefront.   Among other findings, KONG discovered that the operators of the

"JSS SUPPLY" storefront had provided contact information to Amazon that included the address—309 NE 6th Street, Atlanta, IL 61723—that is the publicly-listed "principal office" of JSS Supply and Smith's home residence. Upon information and belief, additional entities and/or individuals may also assist in the operation of the "JSS SUPPLY" and "jsssupply" storefronts.

187. On October 18, 2018, counsel for KONG sent a cease-and-desist letter to JSS Supply and Smith via overnight delivery, demanding that Defendants immediately cease selling products bearing the KONG Trademarks and disclose every person and entity that provided Defendants with the products they had listed for sale. KONG did not receive any response to its letter, and Defendants continued to sell products bearing the KONG Trademarks through their "JSS SUPPLY" and "jsssupply" storefronts.

188. On September 16, 2019, counsel for KONG sent another cease-and-desist letter to JSS Supply and Smith which again demanded that Defendants cease selling products bearing the KONG Trademarks and explained why Defendants' sales are unlawful.

189. KONG has not received any response to either of its letters. As of the time of filing, Defendants are continuing to advertise and sell products bearing the KONG Trademarks through their "JSS SUPPLY" and "jsssupply" storefronts.

190. As of the time of filing, Defendants' Amazon storefront is called "JSS SUPPLY." The "Merchant ID" number for Defendants' Amazon storefront is A1WFD782PGXDEH, and the storefront can be accessed at: https://www.amazon.com/sp?seller=A1WFD782PGXDEH. Defendants' "jsssupply" storefront on eBay can be accessed at: https://www.ebay.com/usr/jsssupply

191.    KONG's October 18, 2018 and September 16, 2019 letters to Defendants provided notice that KONG is located in Colorado and is harmed in Colorado by Defendants' illegal sales of infringing products bearing the KONG Trademarks.

192.    Defendants' conduct is typical of unauthorized sellers who know that they are engaged in unlawful conduct but choose to ignore letters in hopes that the trademark owner will not take legal action to stop their sales.

193.    Defendants' disregard of KONG's cease-and-desist letters and continued sale of non-genuine products despite being informed of their unlawful conduct demonstrates that they are acting intentionally, willfully, and maliciously.

**Defendants Are Tortiously Interfering with KONG's Agreements and Business Relationships with its Authorized Sellers**

194.    KONG sells KONG products only to Authorized Sellers.

195.    Defendants are not Authorized Sellers, and have sold a high volume of products bearing the KONG Trademarks through their storefronts on Amazon and eBay.

196.    Through investigation, KONG has been able to determine that Defendants are obtaining the products they resell from at least one of KONG's Authorized Sellers.  Although KONG must take discovery in this action to learn all of the sources of Defendants 'products, based on Defendants' sales volume it is likely that Defendants are obtaining their products from multiple Authorized Sellers in addition to the Authorized Seller KONG has already identified.

197.    Defendants have purchased products from KONG's Authorized Sellers for the purpose of reselling the products on the Internet without KONG's approval, with full knowledge that such behavior would unlawfully infringe upon the KONG Trademarks.

198.    KONG's agreements with its Authorized Sellers prohibit Authorized Sellers from selling KONG products to third parties, like Defendants, who are not Authorized Sellers and who intend to resell the products.

199.    Defendants were informed of this prohibition by at least October 19, 2018.  On that date, Defendants received a cease-and-desist letter from KONG's attorneys.   KONG's letter informed Defendants that the contracts between KONG and its Authorized Sellers prohibit Authorized Sellers from selling KONG products to any person or entity that is not an Authorized Seller and intends to resell the products.

200.    KONG's letter also informed Defendants that, by purchasing KONG products from an Authorized Seller for purposes of resale, they were causing a breach of the agreement between KONG and its Authorized Seller and were interfering with KONG's agreements and business relationships.

201.    KONG's letter also informed Defendants that if they continued to acquire products from KONG's Authorized Sellers for the purpose of reselling them, they would be liable for tortuously interfering with KONG's contracts and/or business relationships.

202.    Despite being provided this information, upon information and belief, Defendants have continued to acquire products from KONG's Authorized Sellers with the intent to resell them.

203.    Upon information and belief, Defendants willfully and knowingly induced, and are continuing to induce, unknown Authorized Sellers to breach their agreements with KONG so they can acquire products bearing the KONG Trademarks and unlawfully infringe upon the KONG Trademarks by reselling the products.

**KONG Has Suffered Significant Harm as a Result of Defendant's Conduct**

204.    As set forth above, the unauthorized sale of products bearing the KONG Trademarks through unauthorized sellers, such as Defendants, has caused significant harm to the KONG brand.

205.    When a consumer receives from Defendants a non-genuine, poor-quality, or defective product that does not come with the Satisfaction Guarantee, the consumer associates that negative experience with KONG.  The consumer may also leave a negative review on a KONG product page.  For these reasons, Defendants' ongoing sale of unauthorized products bearing the KONG Trademarks harms the KONG brand.

206.    KONG has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions, including, but not limited to, loss of sales, damage to its intellectual property and damage to its existing and potential business relations.

207.    KONG has suffered, and will continue to suffer, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

208.    KONG is entitled to injunctive relief because, upon information and belief, Defendants will otherwise continue to sell products bearing the KONG Trademarks unlawfully and infringe the KONG Trademarks, causing continued irreparable harm to KONG 's reputation, goodwill, relationships, intellectual property, and brand integrity.

209.    Defendants' conduct was and is knowing, intentional, willful, malicious, wanton, and contrary to law.

210.    Defendants' willful infringement of the KONG Trademarks and continued pattern of misconduct demonstrate an intent to harm KONG.

## FIRST CAUSE OF ACTION
### Trademark Infringement
### 15 U.S.C. §§ 1114

211.　KONG re-alleges and incorporates the allegations set forth in the foregoing paragraphs.

212.　KONG owns the KONG Trademarks.

213.　KONG has registered the KONG Trademarks with the United States Patent and Trademark Office.

214.　The KONG Trademarks are valid and subsisting trademarks in full force and effect.

215.　Defendants willfully and knowingly used, and continue to use, the KONG Trademarks in interstate commerce for the purpose of selling products bearing the KONG Trademarks without KONG's consent.

216.　The products Defendants sell bearing the KONG Trademarks are not authorized for sale by KONG.

217.　The products Defendants sell bearing the KONG Trademarks do not come with the Satisfaction Guarantee.

218.　KONG has established legitimate and substantial quality-control procedures with which genuine KONG products must comply.

219.　KONG abides by these quality control procedures and requires all of its Authorized Sellers to abide by these quality controls.

220.　KONG's quality controls are legitimate and material, as they protect consumers and prevent consumers from receiving poor-quality products that could harm them. When a consumer considers whether to purchase a product bearing the KONG Trademarks, the applicability of KONG's quality controls to the product is relevant to the consumers' purchasing decision.

221.   The products Defendants sell bearing the KONG Trademarks are not subject to, do not abide by, and interfere with KONG's quality controls and customer-service requirements.

222.   Because the products Defendants sell bearing the KONG Trademarks do not come with the Satisfaction Guarantee and are not subject to, do not abide by, and interfere with KONG's quality controls and customer-service requirements, the products Defendants sell are materially different from KONG products sold by Authorized Sellers.

223.   Because the products Defendants sell bearing the KONG Trademarks are materially different from KONG products sold by Authorized Sellers, the products Defendants sell are not genuine KONG products.

224.   Defendants' unauthorized sale of products bearing the KONG Trademarks interferes with KONG's quality controls and ability to exercise quality control over products bearing the KONG Trademarks.

225.   Defendants' unauthorized advertisement and sale of products bearing the KONG Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer are covered by the Satisfaction Guarantee and are subject to and abide by KONG's quality controls when, in fact, they are not.

226.   Defendants' unauthorized sale of products bearing the KONG Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the KONG Trademarks suggests that the products Defendants offer for sale are genuine KONG products when, in fact, they are not.

227.   Defendants' unauthorized sale of products bearing the KONG Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the KONG

Trademarks suggests that the products Defendants offer for sale are sponsored or authorized by KONG when, in fact, they are not.

228.    Defendants' unauthorized use of the KONG Trademarks has infringed and materially damaged the value of the KONG Trademarks and caused significant damage to KONG's business relationships.

229.    As a proximate result of Defendants' actions, KONG has suffered, and continues to suffer, immediate and irreparable harm.  KONG has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.  This immediate and irreparable harm includes damage to brand goodwill when consumers receive poor-quality products and post negative reviews that will remain on Amazon permanently, harming KONG's reputation among consumers and the placement of its products in search results.

230.    KONG is entitled to recover its damages caused by Defendants' infringement of the KONG Trademarks and disgorge Defendants' profits from Defendants' willfully infringing sales and unjust enrichment.

231.    KONG is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, KONG will suffer irreparable harm.

232.    KONG is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed the KONG Trademarks.

## SECOND CAUSE OF ACTION
### Unfair Competition
### 15 U.S.C. § 1125(a)(1)(A)

233.    KONG re-alleges and incorporates the allegations set forth in the foregoing paragraphs.

234.    KONG is the owner of the KONG Trademarks.

235.    Defendants have willfully and knowingly used, and continue to use, the KONG Trademarks in interstate commerce for purposes of selling products bearing the KONG Trademarks without KONG's consent.

236.    The products Defendants advertise and sell bearing the KONG Trademarks are not authorized for sale by KONG.

237.    KONG has established and implemented legitimate and substantial quality controls with which genuine KONG products must comply.

238.    KONG abides by these quality controls and requires all of its Authorized Sellers to abide by these quality controls.

239.    KONG's quality controls are material, as they protect consumers and prevent them from receiving poor-quality, damaged, and defective products.

240.    The products Defendants advertise and sell bearing the KONG Trademarks are not subject to, do not abide by, and interfere with KONG's quality controls and customer-service requirements.

241.    Because the products Defendants advertise and sell bearing the KONG Trademarks do not come with the Satisfaction Guarantee and are not subject to, do not abide by, and interfere with KONG's quality controls and customer-service requirements, the products Defendants sell are materially different from genuine KONG products.

54

242.     Because the products Defendants advertise and sell bearing the KONG Trademarks do not come with the Satisfaction Guarantee and are not subject to, do not abide by, and interfere with KONG's quality controls and customer-service requirements, the products Defendants advertise and sell are not genuine KONG products.

243.     Defendants' unauthorized advertisement and sale of products bearing the KONG Trademarks interferes with KONG's quality controls and its ability to exercise quality control over products bearing the KONG Trademarks.

244.     Defendants' unauthorized advertisement and sale of products bearing the KONG Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer are covered by the Satisfaction Guarantee and are subject to and abide by KONG's quality controls when, in fact, they are not.

245.     Defendants' unauthorized advertisement and sale of products bearing the KONG Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants advertise and offer for sale are genuine KONG products when, in fact, they are not.

246.     Defendants' unauthorized advertisement and sale of products bearing the KONG Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants advertise and offer for sale are sponsored by, authorized by, or otherwise connected with KONG when, in fact, they are not.

247.     Defendants' unauthorized use of the KONG Trademarks has infringed upon and materially damaged the value of the KONG Trademarks and caused significant damage to KONG's business relationships.

248.     As a result of Defendants' conduct, KONG has suffered, and continues to suffer, immediate and irreparable harm.  This immediate and irreparable harm includes damage to brand goodwill when consumers receive poor-quality products and post negative reviews that will remain on Amazon permanently, harming KONG's reputation among consumers and placement in search results.

249.     KONG has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

250.     KONG is entitled to recover its damages caused by Defendants' infringement of the KONG Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

251.     KONG is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, KONG will suffer irreparable harm.

252.     KONG is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the KONG Trademarks.

**THIRD CAUSE OF ACTION**
**False Advertising**
**15 U.S.C. § 1125(a)(1)(B)**

253.     KONG re-alleges and incorporates the allegations set forth in the foregoing paragraphs.

254.     KONG owns the KONG Trademarks.

255.     KONG has registered the KONG Trademarks with the United States Patent and Trademark Office.

256.    The KONG Trademarks are valid and subsisting trademarks in full force and effect.

257.    Through their "JSS SUPPLY" Amazon storefront, Defendants have willfully and knowingly used, and continue to use, the KONG Trademarks in interstate commerce for purposes of advertising, promoting, and selling products bearing the KONG Trademarks without KONG's consent.

258.    Defendants' advertisements and promotions of their products unlawfully using the KONG Trademarks have been disseminated to the relevant purchasing public.

259.    KONG products purchased from KONG's Authorized Sellers, who comply with KONG's quality controls, come with the Satisfaction Guarantee.

260.    KONG cannot oversee or take action to correct the quality of its products sold by unauthorized sellers.  As a result, KONG does not extend its Satisfaction Guarantee to products that are sold by unauthorized sellers who are outside of and do not comply with KONG's quality controls.  Accordingly, the products Defendants sell bearing the KONG Trademarks do not come with the Satisfaction Guarantee.

261.    Defendants falsely advertise that the products they sell bearing the KONG Trademarks come with the Satisfaction Guarantee.  As discussed above, the product listings on which Defendants sell products bearing the KONG Trademarks specifically state that they come with the Satisfaction Guarantee.

262.    This representation is false because the products Defendants sell bearing the KONG Trademarks do not come with the Satisfaction Guarantee.

263.    Defendants' use of the KONG Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the KONG Trademarks misrepresents the

nature, characteristics, qualities, and origin of the products because it suggests that they come with the KONG when, in fact, they do not.

264.    As a proximate result of Defendants' actions, KONG has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

265.    KONG is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, KONG will suffer irreparable harm.

266.    KONG is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the KONG Trademarks.

<u>**FOURTH CAUSE OF ACTION**</u>
**Trademark Dilution**
**15 U.S.C. § 1125(c)**

267.    KONG re-alleges and incorporates the allegations set forth in the foregoing paragraphs.

268.    Products bearing the KONG ® trademark have been sold to the public since 1976. For more than 40 years, KONG has been recognized by consumers as the source of high quality pet products bearing the KONG® trademark.

269.    The KONG® trademark was first filed with the United States Patent and Trademark Office in 1986, and was registered in 1987.  Since that time, the KONG® trademark has been filed and registered with respect to numerous categories of goods.

270.    KONG is the owner of the KONG® trademark, and has registered the trademark with the United States Patent and Trademark Office.

271.    The KONG® trademark is valid, subsisting, and in full force and effect.

272.    KONG has expended substantial time, effort, money, and resources advertising and promoting products under the KONG® trademark.  As a result of KONG's efforts, the KONG® trademark is the means by which KONG products are distinguished from others in the marketplace.

273.    KONG markets, advertises, and sells products bearing the KONG® trademark throughout the United States.

274.    KONG has implemented legitimate and substantial quality controls that it requires all Authorized Sellers to follow to protect the KONG name and brand.

275.    Consumers throughout the United States recognize and associate the KONG name with quality.

276.    Because of the quality, durability, and dependability of KONG products and KONG's use of the KONG® trademark, consumers trust the KONG name and KONG products.

277.    The KONG® trademark is inherently distinctive, and as a result of KONG'S long and continuous use of the KONG® trademark, it has acquired a secondary meaning associated by purchasers and the public with KONG's products.

278.    KONG is widely recognized by the general consuming public as the designated source of goods bearing the KONG® trademark.

279.    For these reasons, since at least 2005 the KONG® trademark has been famous, distinctive, and a widely recognized mark by the consuming public.

280.    After the KONG® trademark became famous, beginning in or around 2019, Defendants have willfully used the KONG® trademark in connection with the unauthorized and illegal sale of products.

281.   Because the products sold by Defendants do not come with the Satisfaction Guarantee and are not subject to and do not abide by KONG's quality controls, consumers who purchase products from Defendants are more likely to receive a damaged, defective, or otherwise poor quality product and have an unsatisfactory customer experience.  Numerous customers have complained about receiving poor quality products from Defendants, and have also complained about Defendants' customer service.

282.   Consumers who receive poor quality products that do not come with the Satisfaction Guarantee or customer service provided by Authorized Sellers are likely to associate that negative experience with KONG and the KONG® trademark.  As a result, Defendants' unauthorized and willful use of the KONG® trademark is tarnishing and diluting the value and distinctive quality of the KONG® trademark.

283.   Defendants' unlawful actions have harmed the reputation and goodwill associated with the KONG® trademark, and KONG has suffered and will continue to suffer immediate and irreparable injury.  Further, Defendants' actions have harmed and will continue to harm consumers interested in purchasing genuine KONG products.

284.   As a proximate result of Defendants' actions, KONG has suffered, and will continue to suffer, great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

285.   KONG is entitled to recover its damages caused by Defendants' dilution of the KONG® Trademark and disgorge Defendants' profits from their unlawful sales and unjust enrichment.

286.     KONG is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, KONG will suffer irreparable harm.

287.     KONG is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the KONG Trademarks.

**FIFTH CAUSE OF ACTION**
**Common Law Trademark Infringement and Unfair Competition**

288.     KONG re-alleges and incorporates the allegations set forth in the foregoing paragraphs.

289.     KONG owns the KONG Trademarks.

290.     The KONG Trademarks are valid and subsisting trademarks in full force and effect.

291.     The KONG Trademarks are distinctive and widely recognized by the consuming public.  KONG's products are sold and purchased through its website and its network of Authorized Sellers throughout the United States, including Colorado.

292.     KONG is widely recognized as the designated source of goods bearing the KONG Trademarks.

293.     Defendants willfully and knowingly used, and continue to use, the KONG Trademarks in commerce for purposes of selling products bearing the KONG Trademarks in Colorado without KONG's consent.

294.     The products Defendants sell bearing the KONG Trademarks are not authorized for sale by KONG.

295.     The products Defendants sell bearing the KONG Trademarks do not come with the Satisfaction Guarantee

296.    KONG has established legitimate and substantial quality-control procedures over KONG products.

297.    KONG abides by these quality-control procedures and requires all Authorized Sellers to abide by them as well.

298.    KONG's quality controls are material, as they protect consumers and prevent them from receiving poor-quality products that could harm them.  When a consumer considers whether to purchase a product bearing the KONG Trademarks, the applicability of KONG's quality controls to the product is relevant to the consumer's purchasing decision.

299.    The products Defendants sell bearing the KONG Trademarks are not subject to, do not abide by, and interfere with KONG's quality controls and customer-service requirements.

300.    Because the products Defendants sell bearing the KONG Trademarks do not come with the Satisfaction Guarantee and are not subject to, do not abide by, and interfere with KONG's quality controls and customer-service requirements, the products Defendants sell are materially different from genuine KONG products sold by Authorized Sellers.

301.    Because the products Defendants sell bearing the KONG Trademarks are materially different from KONG products sold by Authorized Sellers, the products Defendants sell are not genuine KONG products.

302.    Defendants' unauthorized sale of products bearing the KONG Trademarks interferes with KONG's quality controls and its ability to exercise quality control over products bearing the KONG s Trademarks.

303.    Defendants' unauthorized advertisement and sale of products bearing the KONG Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests

that the products Defendants offer are covered by the Satisfaction Guarantee and are subject to and abide by KONG's quality controls when, in fact, they are not.

304.    Defendants' unauthorized sale of products bearing the KONG Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the KONG Trademarks suggests that the products Defendants offer for sale are genuine KONG products when, in fact, they are not.

305.    Defendants' unauthorized sale of products bearing the KONG Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the KONG Trademarks suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with KONG when, in fact, they are not.

306.    Defendants' knowing and willful use of the KONG Trademarks in connection with the unauthorized and illegal sale of products bearing the KONG Trademarks infringes the KONG Trademarks and is contrary to honest practice in industrial and commercial matters.

307.    Defendants' unauthorized use of the KONG Trademarks has infringed upon and materially damaged the value of the KONG Trademarks, caused significant damage to KONG's business relations, and infringed the KONG Trademarks.

308.    As a result of Defendants' conduct, KONG has suffered, and continues to suffer, immediate and irreparable harm.  This immediate and irreparable harm includes damage to brand goodwill when consumers receive poor-quality products and post negative reviews that will remain on Amazon permanently, harming KONG's reputation among consumers and placement in search results.

309.    KONG has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

310.    KONG is also entitled to punitive damages because Defendants acted with actual malice accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by their acts and omissions.

### SIXTH CAUSE OF ACTION
### Deceptive Trade Practices
### C.R.S. § 6-1-105

311.    KONG re-alleges and incorporates the allegations set forth in the foregoing paragraphs.

312.    KONG owns the KONG Trademarks.

313.    The KONG Trademarks are valid and subsisting trademarks in full force and effect.

314.    Defendants willfully and knowingly used, and continue to use, the KONG Trademarks in interstate commerce, including through their product listings on Amazon and eBay, for the purpose of advertising, promoting, and selling products bearing the KONG Trademarks without the consent of KONG.

315.    Defendants' advertisements and promotions of products unlawfully using the KONG Trademarks have been disseminated to the relevant purchasing public.

316.    Defendants use the KONG Trademarks with the intent that consumers will rely on Defendants' use of the KONG Trademarks and believe that Defendants are selling genuine KONG products.

317.    The products Defendants advertise, promote, and sell bearing the KONG Trademarks do not come with the Satisfaction Guarantee.

318.    KONG has established substantial quality-control procedures that genuine KONG products must comply with.

319.   KONG abides by these quality-control procedures and requires all Authorized Sellers to abide by them as well.

320.   KONG's quality controls are legitimate and material, as they protect consumers and prevent them from receiving poor-quality products that could harm them.  When a consumer considers whether to purchase a product bearing the KONG Trademarks, the applicability of KONG's quality controls to the product is relevant to the consumer's purchasing decision.

321.   The products Defendants advertise, promote, and sell bearing the KONG Trademarks are not subject to, do not abide by, and interfere with KONG's quality controls and customer-service requirements.

322.   Because the products Defendants advertise, promote, and sell bearing the KONG Trademarks do not come with the Satisfaction Guarantee and are not subject to, do not abide by, and interfere with KONG's quality controls and customer-service requirements, the products Defendants sell are materially different from genuine KONG products sold by Authorized Sellers.

323.   Because the products Defendants advertise, promote, and sell bearing the KONG Trademarks are materially different from KONG products sold by Authorized Sellers, the products Defendants sell are not genuine KONG products.

324.   Defendants' unauthorized advertisement, promotion, and sale of products bearing the KONG Trademarks interfere with KONG's quality controls and ability to exercise quality control over products bearing the KONG Trademarks.

325.   Defendants' unauthorized advertisement, promotion, and sale of products bearing the KONG Trademarks are likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the KONG Trademarks suggests that the products Defendants offer for sale are

covered by the Satisfaction Guarantee and are subject to, and abide by, KONG's quality controls when, in fact, they do not.

326.    Defendants' unauthorized advertisement, promotion, and sale of products bearing the KONG Trademarks are likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the KONG Trademarks suggests that the products Defendants offer for sale are genuine KONG products when, in fact, they are not.

327.    Defendants' unauthorized advertisement, promotion, and sale of products bearing the KONG Trademarks are likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the KONG Trademarks suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with KONG when, in fact, they are not.

328.    Defendants' unauthorized and deceptive use of the KONG Trademarks is material and likely to influence customers to purchase the products Defendants sell, as consumers are likely to believe that products Defendants advertise using the KONG Trademarks are genuine KONG products that are subject to, and abide by, KONG's quality-control requirements and come with benefits associated with authentic KONG products when, in fact, they do not.

329.    Defendants' unauthorized use of the KONG Trademarks in advertising, and otherwise, infringes the KONG Trademarks.

330.    Defendants' use of the KONG Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the KONG Trademarks is a deceptive trade practice under C.R.S. § 6-1-105.

331.    As a result of Defendants' conduct, KONG has suffered, and continues to suffer, immediate and irreparable harm.  This immediate and irreparable harm includes damage to brand goodwill when consumers receive poor-quality products and post negative reviews that will remain

on Amazon permanently, harming KONG's reputation among consumers and placement in search results.

332.    KONG has also suffered, and continues to suffer, damages, including but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

333.    Pursuant to C.R.S. § 6-1-113, KONG is entitled to an injunction enjoining Defendants' unlawful conduct, and an award of treble damages and attorneys' fees and costs.

<strong><u>SEVENTH CAUSE OF ACTION</u></strong><br><strong>Intentional Interference with Existing and/or Prospective Contract and Business Relations</strong>

334.    KONG re-alleges and incorporates the allegations set forth in the foregoing paragraphs.

335.    KONG sells KONG products only to Authorized Sellers.

336.    KONG has entered into agreements with its Authorized Sellers to sell KONG products. These agreements specifically prohibit Authorized Sellers from selling KONG products to third parties, such as Defendants, who are not Authorized Sellers and who intend to resell the products.

337.    Defendants have sold—and continue to sell—a high volume of products bearing the KONG Trademarks through their "JSS SUPPLY" Amazon storefront and "jsssupply" eBay storefront.

338.    Through investigation, KONG has been able to determine that Defendants are obtaining the products they resell from at least one of KONG's Authorized Sellers. Although KONG must take discovery in this action to learn all of the sources of Defendants 'products, based on Defendants' sales volume it is likely that Defendants are obtaining their products from multiple Authorized Sellers in addition to the Authorized Seller KONG has already identified.

339.    Defendants know that KONG's agreements with its Authorized Sellers prohibit Authorized Sellers from selling KONG products to anyone who, such as Defendants, is not an Authorized Seller and intends to resell the products.

340.    Defendants had notice of this prohibition at the latest on or around October 19, 2018, through a cease-and-desist letter they received from KONG.

341.    Despite having knowledge of this prohibition, Defendants intentionally, knowingly, and willfully interfered with KONG's agreements with its Authorized Sellers by inducing the Authorized Sellers to breach their agreements and sell products to Defendants so they could unlawfully resell them on the Internet.

342.    After being notified of this prohibition, Defendants intentionally induced one or more of KONG's Authorized Sellers to breach their agreements with KONG by continuing to acquire products from KONG's Authorized Sellers for the purpose of selling them on the Internet.

343.    Defendants acted with a wrongful purpose and employed wrongful means by acquiring KONG products for the purpose of reselling those products on the Internet in violation of KONG's agreements with its Authorized Sellers.  Specifically, Defendants induced Authorized Sellers to breach their agreements with KONG so that Defendants could unlawfully infringe upon and materially damage the value of the KONG Trademarks by reselling the products they obtained from Authorized Sellers on the Internet.

344.    Because Defendants have refused to disclose how they have obtained the products bearing the KONG Trademarks they have resold, KONG must take discovery in this action to learn the specific identities of all the Authorized Sellers that sold products to Defendants.  Defendants, however, know the sources of the KONG products they have obtained and the basis for KONG's claim of tortious interference.  KONG's agreements with its Authorized Sellers are a specific class

of contract that Defendants caused Authorized Sellers to breach when they purchased products from Authorized Sellers for resale.

345. Defendants' actions have caused injury to KONG for which KONG is entitled to compensatory damages in an amount to be proven at trial.

346. The injury to KONG is immediate and irreparable, as KONG's reputation and relationships have been damaged among both its consumers and Authorized Sellers.

347. KONG is also entitled to punitive damages because Defendants acted with actual malice and accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by their acts and omissions.

## PRAYER FOR RELIEF

WHEREFORE, KONG prays for relief and judgment as follows:

A. Judgment in favor of KONG and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B. Preliminary and permanent injunctions enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

        i) Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all KONG products;

        ii) Prohibiting the Enjoined Parties from using any of the KONG Trademarks in any manner, including advertising on the Internet,

iii)  Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all KONG products as well as any products bearing any of the KONG Trademarks;

iv)  Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the KONG Trademarks, including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v)  Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of the KONG products, or any of the KONG Trademarks;

vi)  Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the KONG Trademarks which associate the KONG products or the KONG Trademarks with the Enjoined Parties or the Enjoined Parties' websites or storefronts;

vii)  Requiring the Enjoined Parties to take all action to remove unauthorized KONG Trademarks from the Internet, including from www.amazon.com and www.ebay.com;

C.  An award of attorneys' fees, costs, and expenses; and

D.     Such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

KONG demands a trial by jury on all claims and issues so triable.


Dated:  December 19, 2019                 Respectfully submitted,

                                          /s/ *William D. Kloss, Jr.*
                                          William D. Kloss, Jr. (Ohio Bar No. 0040854)
                                          Daniel C. Wucherer (Ohio Bar No. 0097210)
                                          Arryn K. Miner (Ohio Bar No. 0093909)
                                          VORYS, SATER, SEYMOUR AND PEASE LLP
                                          52 East Gay Street
                                          Columbus, Ohio  43215
                                          Telephone:  (614) 464-6360
                                          Email:  wdklossjr@vorys.com
                                                   dcwucherer@vorys.com
                                                   akminer@vorys.com

                                          Martha L. Fitzgerald, #14078
                                          Joshua A. Weiss
                                          BROWNSTEIN HYATT FABER SCHRECK, LLP
                                          410 Seventeenth Street, Suite 200
                                          Denver, CO 80202-4432
                                          Telephone:  (303) 223-1472
                                          Email:  mfitzgerald@bhfs.com
                                                   jweiss@bhfs.com

                                          *Counsel for Plaintiff The Kong Company, LLC*